NATIONAL SAVINGS BANK OF ALBANY, a banking corporation chartered under the laws of the State of New York, and First Financial Bank, a division of Alabama Federal Savings & Loan Association, a savings and loan associated chartered under the laws of the United States, Plaintiffs,

v.

JEFFERSON BANK, a banking corporation chartered under the laws of the State of Florida, Grand, Miller & Krause, a general partnership, Grand and Krause, P.A., Robert S. Miller, P.A., individually and as co-partners and Leonard Grand, and Peter A. Krause, individually, Defendants.

No. 88–6309–Civ.

United States District Court, S.D. Florida.

July 10, 1989.

---

7. *See Norman v. Housing Authority of Montgomery*, 836 F.2d 1292 (11th Cir.1988).

Stanley H. Wakshlag, Akerman, Senterfitt and Eidson, Miami, Fla., for plaintiffs.

Herbert Stettin and Andrew L. Gordon, Karen L. Stetson, Shutts and Bowen, Miami, Fla., for defendant Jefferson.

## ORDER

NESBITT, District Judge.

This cause is before the Court upon the motion of Plaintiff National Savings Bank of Albany ("National") to strike the motion of Defendant Jefferson Bank ("Jefferson") for an extension of time within which to seek review of a non-dispositive Magistrate order pertaining to discovery.

This action involves a dispute over funding of a loan transaction for the purchase of real estate. By order of reference entered December 2, 1988, this Court referred all pre-trial matters to United States Magistrate Samuel J. Smargon, including the resolution of any matters relating to discovery. On May 30, 1989, the Magistrate entered an order which, *inter alia*, denied non-party witnesses' motion to compel witness statements pursuant to Fed.R.Civ.P. 26(b)(3).*

On June 7, 1989, Jefferson filed a motion for an extension of time within which to file objections to the Magistrate's report. On June 13, 1989, Jefferson's motion was granted by the Court. National suggests that Jefferson's motion was filed after the expiration of the prescribed period to file objections and was therefore untimely under Rule 6(b). Thus, National asserts Jefferson must show excusable neglect under

after be referred to as "Rule ＿＿."

Rule 6(b) for not filing its motion in a timely manner. Accordingly, the instant dispute centers on whether Jefferson timely filed its motion for an extension of time.

National urges this Court to deny Jefferson's motion for an extension of time within which to seek review of the Magistrate's May 30, 1989 order, citing three grounds: (1) Jefferson's failure to comply with Local Rule 4(a)(1) of the Magistrate Rules, Southern District of Florida; (2) alternatively, Jefferson's failure to comply with Rule 72; and (3) Jefferson's lack of standing to object to the Magistrate's order on behalf of the witnesses. Each contention is addressed separately below.

■ National's first argument is that Jefferson failed to timely file a motion for extension of time within the time constraints of Local Magistrate Rule 4(a)(1). That rule provides that "any party may appeal from a Magistrate's [non-dispositive] order ... within *4 days* after the Magistrate's Order has been *filed* with the Clerk, unless a different time is prescribed by the Magistrate or District Judge." (emphasis added). Jefferson does not dispute that it did not comply with this rule, but argues that Federal Rule of Civil Procedure 72(a) supersedes the Local Rule. Rule 72(a) provides that the district court shall consider objections to a Magistrate's non-dispositive order "provided they are served and filed within *10 days* after the *entry* of the order ..." (emphasis added).

Local Rules may regulate litigation practice in a particular district "in any manner not inconsistent" with the Federal Rules. Rule 83. Because Local Magistrate Rule 4(a)(1) and Rule 72(a) prescribe different time periods within which to object to a non-dispositive pretrial order by a Magistrate, they are plainly inconsistent.[1] Moreover, in addition to prescribing different time periods, the two rules prescribe different dates which trigger the appeal time.

The Local Rule grants 4 days from the date the Magistrate *files* the order, while the Federal Rule imposes a 10–day deadline from the *entry* date of the order. Accordingly, Rule 72(a)'s 10–day time prescription from date of entry controls and overrides Local Magistrate Rule 4(a)(1)'s attempt to impose a 4–day prescription from date of filing.

National cites *United States v. Barney,* 568 F.2d 134 (9th Cir.), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978), in support of its assertion that the Local Rule's shorter response time should control. The court in *Barney* held that 28 U.S.C. § 636(b)(1)'s 10–day response time in which to file objections to magistrate rulings is "a maximum not a minimum," and thus could be reduced by the court. *Id.* at 136. However, *Barney* was decided before the addition of Rule 72, which became effective August 1, 1983. Rule 72 was enacted specifically to address referral of non-dispositive matters under 28 U.S.C. § 636(b)(1)(A). *See* advisory committee notes. Rule 72(a) unambiguously requires objections to non-dispositive magistrate orders to be filed within 10 days of the entry of a magistrate's order.[2] In the wake of Rule 72, *Barney* is of limited precedential value to these facts.

■ National's second argument is that, even assuming the Local Rule deadline of 4 days does not apply, Jefferson has failed to satisfy the 10–day requirement of Rule 72(a). Specifically, National argues that Jefferson had only 13 calendar days in which to respond (10 days plus 3 mailing days), reasoning that, "[b]ecause Jefferson had more than 11 days, the intervening weekends and holidays were not excludable." (Plaintiffs' reply to Jefferson's witnesses' response to Plaintiffs' motion to strike Jefferson's motion for extension, page 3). Unfortunately, this misconception—that 3 mailing days are added to an

---

1. This conclusion is bolstered by the advisory committee notes to Rule 72(a), which explain that Rule 72(a) "fixes a 10–day period in order to avoid uncertainty and provide uniformity that will eliminate the confusion that might arise if different periods were prescribed by local rule in different districts."

2. The Court also notes that *Barney* involved objections to dispositive pretrial matters filed under 28 U.S.C. § 636(b)(1)(B), which are now governed by Rule 72(b). This case, of course, involves objections to a *non-dispositive* matter.

originally prescribed period of less than 11 days for computation purposes—is a recurring one in this district.[3]

Rule 6(a) provides that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Rule 6(e) provides that 3 days shall be added to the prescribed period whenever a party is served by mail. Further, if the last day of the time period, as computed, falls on a weekend or legal holiday, a party has until the next non-holiday weekday to act under Rule (6)(a).

National relies primarily on *Pagan v. Bowen*, 113 F.R.D. 667 (S.D. Fla.1987), for the proposition that Rule 6(e)'s 3 mailing days should be added to the 10-day prescribed period resulting in a total of 13 days, which would then remove the total period from the operation of Rule 6(a)'s less-than-eleven day provision. This Court disagrees with *Pagan*'s interpretation of the interaction between Rule 6(a) and Rule 6(e).[4]

The 1985 amendment to the Federal Rules intended to extend the response time allowed by various rules prescribing 10-day limits.[5] Further, the committee wished to afford equal response time to litigants served by mail. The drafters have evinced a clear intent that Rule 6(e)'s 3-day mailing provision should not operate in such a man-

ner that would contravene the purpose of Rule 6(a). Accordingly, Rule 6(e)'s 3-day period should not be added to an original period of less than 11 days for computation purposes.

Professors Wright and Miller now endorse computing the time periods of 6(a) and 6(e) separately. In the 1987 edition of their treatise, the authors note three possible alternatives with respect to integrating Rules 6(a) and 6(e). First, the 3 days can be added to the original period ("it probably should be rejected as inconsistent with the intent of the 1985 amendment to Rule 6(a), as well as with the underlying purpose of Rule 6(e))" (footnote omitted). Second, one can compute two separate time spans of 10 and 3 days, excluding weekends and holidays from both ("the second method can lead to an unjustifiable lengthening of the permitted time"). Finally, one may compute the 10-day period, excluding weekends and holidays, and add separately 3 days for mailing. The authors find this alternative most preferable, "because of its fidelity to the purposes of Rule 6(a) and 6(e), and because it avoids creating undesirable incentives for parties to choose one form of service over another." 4A Wright & Miller, *Federal Practice and Procedure*, § 1171 (2d ed. 1987).[6]

Predictably, the third approach has been adopted by all the courts addressing the

---

**3.** National also points out that the Magistrate issued an *oral* ruling on May 12, 1989 (which was subsequently reduced to a written order on May 30, 1989). Apparently, National is suggesting that Jefferson's notice of the oral ruling further militates in favor of requiring a shorter time span within which to file objections. This contention is meritless, since Rule 72(a) expressly requires the Magistrate to enter a *written* order. Although the committee notes state that this requirement is satisfied if an oral ruling is read into the record, because the Magistrate entered a subsequent written order, this Court finds that the date of the written order is the date from which the parties could object.

**4.** Accordingly, the Court also rejects the result reached in *Smart v. Mid-Continent Imports, Inc.*, No. 85–2273, slip op. (D.Kan. Sept. 4, 1986). Both *Pagan* and *Smart* relied on Wright and Miller's 1969 edition, in which the commentators suggested adding the 3-day period to the original period for purposes of computation. However, in their second edition, published in

1987, the authors point out that the 1985 amendment to Rule 6(a) probably renders their former approach incorrect. *See* 4A Wright & Miller, *Federal Practice and Procedure*, § 1171 at page 518, unnumbered footnote (2d ed.1987). Indeed, Wright and Miller now endorse computing the two time periods separately.

**5.** Rule 6(a), prior to its 1985 amendment, provided for the exclusion of intermediate weekends and holidays only when the time period was less than 7 days.

**6.** However, Wright and Miller suggest counting the 3 mailing days *first* and then 10 days pursuant to Rule 6(a) because this "appears more consistent with the purpose of allowing three additional days to account for transmission time of papers in the mail." Wright & Miller, *supra*, at § 1171 n. 19. This Court agrees with the cases cited *infra* that, in the interest of consistency and ease of computation, the 3-day period should be computed *after* the originally prescribed period.

issue. *See, e.g., Nalty v. Nalty Tree Farm,* 654 F.Supp. 1315, 1317 (S.D. Ala. 1987) ("the length of the party's ten day response should be computed, applying the less-than-eleven day provision of Rule 6(a), separately from the three day period allowed by Rule 6(e)"); *Tushner v. U.S. Dist. Court for Cent. Dist. of Cal.,* 829 F.2d 853, 855–56 (9th Cir.1987) (holding that the proper period is "calculated first by applying the less-than-eleven-day provision of Rule 6(a), thereby excluding any intervening weekends and legal holidays. After this computation, three additional days are added for mail service under Rule 6(e)"); *Coles Express v. New England Teamsters & Trucking Industry Pension Fund,* 702 F.Supp. 355, 357 (D.Me.1988) ("Rule 6(e) plainly provides for the *enlargement* of a ten-day filing period so as to accommodate the increased delay almost certain to occur when service is made by mail") (emphasis added).[7]

■ The present case, however, is complicated by the fact that Rule 6(e) is *inapplicable,* although not for the reasons advanced by National. Jefferson was not entitled to 3 mailing days in this instance because Rule 6(e) does not apply to objections raised under Rule 72(a). Rule 6(e) applies only when a party is required to take some act within a prescribed period after *service* of notice by mail. Rule 72(a), on the other hand, does *not* require an act after the *service* of notice. Rather, it requires a party to serve and file objections to a magistrate order "within 10 days of the *entry* of the order." (emphasis added).

Therefore, the drafters of the Federal Rules did not intend to include within Rule 6(e)'s purview appeals brought under Rule 72(a). *Bolger Publications, Inc. v. Graphic Communications Int'l Union Local 229,* 601 F.Supp. 207 (D.Minn.1985).[8]

The Court, therefore, must now determine at what point Jefferson's time to file its motion began to run. As discussed earlier, Rule 72(a) speaks in terms of the *entry* date of the Magistrate's order, not of its *service* date. Both parties agree that the Magistrate's order was "entered" on May 23, 1989. Unfortunately, both parties are wrong.

■ In order to understand at what point the order was "entered," an explanation of the various entries and dates on the docket sheet is necessary. The Magistrate's order in question bears docket entry number 169 in the court file. The date the order is *filed* (i.e., file stamped) is the first date in the left-hand column (here, May 25, 1989). The date immediately following "ORDER" appearing in parenthesis is the date the order was actually signed by the judge (here, May 23, 1989). The final date, appearing at the end of the docket entry ("EOD 5/30/89"), is the date the Clerk of Court actually recorded the order's entry on the docket sheet (here, May 30, 1989). The "EOD", or "entered-on-docket" date, is the legally operative date from which a party must take some action from the entry of an order.[9]

■ Rule 79(a) requires the Clerk of the Court to enter, *inter alia,* all orders on the

---

7. The Court notes that Rule 6(e)'s 3–day extension is *not* subject to Rule 6(a)'s exclusion of intermediate weekends and holidays. Rule 6(a) speaks in terms of *computing* times allowed or prescribed by rules, while Rule 6(e) speaks of *adding* to prescribed periods. It is fairly obvious that one cannot add to a period not yet defined or prescribed. Hence, it would be unreasonable to conclude that a party may exclude intermediate weekends and holidays when computing the separate 3–day mailing period. *Allen v. Colgate Palmolive Co.,* 1987 WL 7365, 1987 Dist. LEXIS 1158 (S.D.N.Y. February 20, 1987).

8. Interestingly, Rule 6(e) *does* apply to appeals brought under Rule 72(*b*), which governs appeals of a Magistrate's *dispositive* order and

prisoner petitions. Significantly, Rule 72(b) requires that a party file any objections within "10 days after being *served*" with a copy of the Magistrate's report. (emphasis added). Further, the advisory committee notes to Rule 72(b) specifically point out that this 10–day period is subject to Rule 6(e)'s 3–day extension for service by mail.

9. Accordingly, the terms "dated," "filed," and "entered" are not to be used interchangeably. The term "dated" refers to the date the order is *signed* by the judge; the term "filed" indicates the date the order is *file stamped* by the Clerk; the term "entered" represents the date the order was actually *recorded* on the docket sheet by the Clerk.

civil docket. Further, the "entry of an order or judgment shall show the date the entry is made." Rule 79(a). Accordingly, an entry is not effective until it is actually placed on the docket sheet.[10] *See Chem–Haulers, Inc. v. United States,* 536 F.2d 610 (5th Cir.1976) ("the date of entry of a judicial order must be recorded in the official court docket; the order is final and appealable only when it is so entered"). In *Herrera v. First Northern Savings and Loan Assoc.,* 805 F.2d 896 (10th Cir.1986), the court cited *Chem–Haulers, supra,* for the proposition that the date of *entry* of an order is the date it is recorded in the docket, *not* the date the order is "filed" (i.e., file stamped). Therefore, that court concluded that entry occurs only when the import of an order or judgment is "reflected in an appropriate notation on the docket sheet." *Herrera,* 805 F.2d at 899 (quoting *Caperton v. Beatrice Pocahontas Coal Co.,* 585 F.2d 683, 688 (4th Cir.1978)). *See also Calhoun v. United States,* 647 F.2d 6 (9th Cir.1981) (requiring entry of order on docket sheet by separate notation specifying the date the Clerk made such notation); *Jones v. Gann,* 703 F.2d 513 (11th Cir.1983) (controlling date from which appeal time begins to run is the date judgment was actually entered on the docket, not when the judgment was filed).[11] Hence, an order is "entered" not when it is signed by the judge, nor when it is "filed" (i.e., file stamped), but rather when it is actually recorded on the docket sheet.[12]

Therefore, it should now be clear that Jefferson timely filed its motion for an extension of time. The Magistrate's order was entered on the docket on May 30, 1989. Therefore, Jefferson could file its objections (or a motion for extension of time without having to show excusable neglect) on or before June 13, 1989.[13]

■ National's third ground for denying Jefferson's motion for an extension of time can be quickly rejected. National asserts that since the underlying motion for production of witnesses' statements was filed

**10.** Typically, the Clerk "enters" an order or judgment on the docket several days after the file stamp is placed on the face of the order. In the most ideal system, the entry date would always coincide with the file stamp date, thereby automatically notifying the parties of the entry date and obviating the need for the parties to inquire as to the entry date. In this busy district, however, such a practice is, unfortunately, improbable. Therefore, the parties' safest avenue is to inquire of the docketing section of the Clerk's office to determine an order or judgment's entry date. *See Hiab Cranes & Loaders, Inc. v. U.S. Truck Cranes, Inc.,* 125 F.R.D. 107, 112 (M.D.Pa. 1989) ("an attorney has a duty to monitor the progress of a case under Rule 77(d) [and] [h]is failure to do so indicates a lack of diligence").

**11.** Although *Jones v. Gann* involved an appeal from a judgment, judgments and orders are treated identically under Rules 79(a) and 77(d).

**12.** It is noteworthy that the date of *service* of a court order is invariably the date the order is entered. Thus, for example, had the Magistrate issued a dispositive report and recommendation requiring a party to file any objections under Rule 72(b) within 10 days after being *served* with a copy of the report, Jefferson would have been deemed "served" by the court on May 30, 1989 (although it could have filed its objections on or before June 16, 1989 since Rule 6(e)'s mailing provision applies to Rule 72(b), but not 72(a)).

Although the fact that *service* of an order and its *entry* date often occur on the same day may seem anomolous and contrary to the intent of the drafters, Rule 77(d) provides that "[i]mmediately upon the *entry* of an order or judgment clerk shall serve a notice of the entry by mail ..." (emphasis added). Thus, the Clerk cannot serve an order until it has been entered on the docket. The date of service is the date the Clerk mails the order. *Nalty,* 654 F.Supp. at 1318. In this district, the Clerk indicates the service of an entered order by typing the phrase "CCAP" on the docket, which means "conformed copies to all parties." Almost without exception the date of service is the same date the order is entered. In any event, Rule 77(d) makes it clear that service of a court order cannot occur before its entry date.

Of course, the fact that a court's service of an order coincides with the order's entry date does not render the service/entry distinction meaningless. Quite often, a party is required under the Federal Rules to perform some act after service of notice or papers from an opposing party (as opposed to the court). Service by an opposing party occurs on the date of mailing; entry dates are irrelevant in this instance.

**13.** The Court notes that National was entitled to file a response to Jefferson's objections. *See* advisory committee notes to Rule 72(a) ("[i]t is also contemplated that a party who is successful before the magistrate will be afforded an opportunity to respond to objections raised to the magistrate's ruling").

by *witnesses*—and not Jefferson—Jefferson cannot appeal the Magistrate's order. Jefferson concedes that the motion should have been filed on behalf of the witnesses rather than on its own behalf.[14] The witnesses have therefore requested permission to amend the motion to name the witnesses as the movants on the basis of scrivener's error. In the interest of justice, that request is GRANTED.[15]

Accordingly, in light of the foregoing, it is ORDERED and ADJUDGED that

National's motion to strike Jefferson's motion for an extension of time within which to seek review of the Magistrate's May 30, 1989 order is DENIED.

DONE and ORDERED.

---

**14.** Jefferson and the non-party witnesses are represented by the same co-counsel.

**15.** The Court also assumes that it was a scrivener's error for Jefferson to have moved for an extension of time, as the motion should have been filed by the witnesses.