Charles KRUGER, Plaintiff,

v.

Kenneth S. APFEL, in his official capacity as Commissioner of Social Security, Defendant.

No. 98–C–144.

United States District Court, E.D. Wisconsin.

Nov. 30, 1998.

Marcie E. Goldbloom, Frederick J. Daley Ltd., Chicago, IL, for Plaintiff.

Penelope C. Fleming, U.S. Dept. of Justice, Office of U.S. Attorney, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

RANDA, District Judge.

This matter comes before the Court on Charles Kruger's ("Kruger") objection to the Recommendation of Magistrate Judge Aaron E. Goodstein dismissing his case for failure to prosecute. For the following reasons, the objection is struck as untimely, and the Recommendation is adopted as the decision of this Court.

### I

This case involves an appeal from an administrative decision by the defendant, Kenneth S. Apfel, Commissioner of Social Security ("the Commissioner"), denying Kruger social security disability benefits. In the Eastern District, such matters are assigned to one of our three federal magistrates for purposes of issuing an initial recommendation as to how the appeal should be resolved. In handling this particular matter, Magistrate Goodstein issued a June 4, 1998 scheduling order requiring Kruger to submit his appeal brief on or before August 4, 1998. On August 3rd, Kruger's counsel requested an extension of that deadline until September 11, 1998, citing the press of other legal business. Magistrate Goodstein granted that extension. September 11th came and went without a brief being filed. Over one month later, on October 13, 1998, Kruger's counsel asked for another extension, until October 16, 1998, to file the overdue brief, again indicating the press of legal business and also citing certain administrative distrac-

tions within her law office. Though this request for a second extension was unopposed by the Commissioner, Magistrate Goodstein denied the same. In a Recommendation dated and filed October 15, 1998, Magistrate Goodstein noted that counsel's busy schedule, while it might explain her failure to file a timely appeal brief, did not explain why she was unable to submit a one-page letter requesting an extension prior to the expiration of the deadline. Upon rejecting the requested extension, Magistrate Goodstein dismissed the case for failure to prosecute, citing Kruger's failure to file a timely appeal brief, the necessary first step in the process of considering a social security appeal.

The Magistrate's Recommendation was mailed to counsel for both parties on October 15, 1998. Kruger's counsel states that she did not actually receive the same until October 20, 1998. Kruger, through his counsel, filed his instant objection to the Magistrate's Recommendation on November 3, 1998. Kruger essentially argues that it is an abuse of discretion to dismiss a case for failure to prosecute without first warning the party at issue that failure to act within a specified time period could result in such a dismissal. Magistrate Goodstein provided no such warning, and thus Kruger asks this Court to reject his Recommendation of dismissal.

### II

The Court might agree with Kruger's objection, as a theoretical matter, given case law from the 7th Circuit indicating that "a district judge's discretion" to dismiss a case for failure to prosecute is "canalize[d]" by the requirement that an "explicit warning" must precede such a dismissal, and that said warning must be more particularized than a judge's standing order (or the language of a local or federal rule) stating that dismissal is a possible sanction for any violation of a scheduling order. *See, Ball v. City of Chicago,* 2 F.3d 752, 755 (7th Cir.1993). The 7th Circuit also seems to require a district court to at least consider the possibility of sanctioning the defaulting party's lawyer, instead of the party himself, where the mistake is the lawyer's alone, which seems to be the case

here. *Id.* at 758. But the Court does not reach these debatable issues. To warrant such review, Kruger was required to file a timely objection to the Magistrate's Recommendation. He failed to do so.

Resolution of the timing issue turns upon an interesting procedural question, one that presents itself with some regularity in federal courts across the country. That is, how does a court calculate the ten-day period for submitting objections to a Magistrate's recommendation when that recommendation is mailed to the parties? To answer that question, the Court must consider the interplay between several provisions of the Federal Rules of Civil Procedure. First, Rule 72, which states as follows:

> Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations.

Fed.R.Civ.P. 72(b). This rule reiterates, in substance, the time period prescribed in 28 U.S.C. § 636(b)(1) for objections to a Magistrate's recommendation ("Within ten days after being served with a copy, any party may serve and file written objections....").

■ Second, Rule 5, which provides that "every order required by its terms to be served ... shall be served upon each of the parties ...", and said service may be accomplished "by mailing it to the attorney ... at the attorney's ... last known address...." Fed.R.Civ.P. 5(a) & (b). That was done here. Magistrate Goodstein mailed a copy of his Recommendation to Kruger's counsel. Moreover, "[s]ervice by mail is complete upon mailing." Fed.R.Civ.P. 5(b). Thus, contrary to the suggestion by Kruger's counsel that she was served on October 20, 1998, the day she actually received her copy of the Recommendation, Kruger was served on October 15, 1998, the day said copy was mailed.

Third, and most importantly, there is the potential interplay of Rules 6(a) and Rule 6(e). Rule 6(a) provides that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Fed.R.Civ.P. 6(a). Thus, one's initial reaction would be to apply this method of calculation for the ten-day period provided in Rule 72 and § 636(b)(1). However, Rule 6(e) provides that "[w]henever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period." Fed.R.Civ.P. 6(e). How the Court applies these two rules affects where the 10–day period may end in a particular case.

For example, if the Court first adds three days to "the prescribed period" pursuant to Rule 6(e), the prescribed period is increased from 10 to 13 days, which is more than 11 days and which places the "prescribed period" outside of the scope of Rule 6(a). Under that interpretation, Kruger's deadline for filing his objection was October 28, 1998. There are cases within the 7th Circuit supporting this method of calculating Kruger's deadline. *See, THK America, Inc. v. NSK Ltd.,* 157 F.R.D. 651, 655–57 (N.D.Ill.1994); *Lerro v. Quaker Oats Co.,* 897 F.Supp. 1131, 1133 fn. 1 (N.D.Ill.1995). However, if the Court first counts forward 10 days from October 15th, excluding weekends and holidays pursuant to Rule 6(a), the initial deadline is October 29, 1998, and then if the Court adds three days to that period pursuant to Rule 6(e), the deadline becomes November 2, 1998 (the three additional days expiring on Sunday, November 1st, which pushes the deadline to the next business day). There is case law outside the 7th Circuit supporting this interpretation. *See, Tushner v. U.S. Dist. Court for Cent. Dist. of Cal.,* 829 F.2d 853, 855–56 (9th Cir.1987); *Sicurella v. Chater,* 896 F.Supp. 121, 122 (W.D.N.Y.1995); *Vaquillas Ranch Company, Ltd. v. Texaco Exploration and Production, Inc.,* 844 F.Supp. 1156, 1158–59 (S.D.Tex.1994); *Nalty v. Nalty Tree Farm,* 654 F.Supp. 1315, 1316–18 (S.D.Ala.1987). A third variation is identical to the latter method, except that the 3–day mailing period is counted *at the beginning* of the 10–day objection period, rather than at the end. Under this approach, the 3–day period ends October 18, 1998, and then counting forward 10 days, excluding weekends and holidays, Kruger's deadline for fil-

ing his objection is October 30, 1998. There is support within and without the 7th Circuit for this interpretation. *See, Epperly v. Lehmann Co.*, 161 F.R.D. 72, 75–76 (S.D.Ind. 1994); *Mullins v. Hinkle*, 953 F.Supp. 744, 746–48 (S.D.W.V.1997). This is also the approach recommended by Professors Wright and Miller in their discussion of the issue. *See*, Wright and Miller, *Federal Practice and Procedure, Civil 2d*, § 1171 at 516–21.

■ This Court tends to agree with the approach taken by the *Epperly* court and advocated by Professors Wright and Miller. The merits of that approach are adequately explained within these two sources, and need not be repeated here. Regardless of which approach the Court chooses, however, Kruger's objection is untimely. The three approaches yield deadlines of October 28th, November 2nd, and October 30th, respectively, and his objection was not filed until November 3rd. There are only two methods of calculation by which Kruger's objection would be timely. The first is where the respective time periods do not begin until October 20th, the day Kruger's counsel actually received her copy of the Recommendation, and either the second or third method of calculation described above is used to calculate the deadline. But as indicated earlier, an "actual receipt" rule runs directly contrary to Rule 5(b)'s requirement that service by mail is effective upon mailing. Moreover, if the time periods do not start until actual receipt, there is no basis for applying Rule 6(e)'s 3–day mailing extension. Thus, the majority of cases simply reject an "actual receipt" rule in such situations. *See, Sicurella*, 896 F.Supp. at 122–23; *Mullins*, 953 F.Supp. at 746, fn. 2; *Epperly*, 161 F.R.D. at 75; *Vaquillas*, 844 F.Supp. at 1158–59. The second method is where weekends and holidays are excluded when calculating *both* the 3–day mailing period and the 10–day objection period, and either the second or third method of calculating the deadline is used. But the majority of cases reject the notion of excluding weekends and holidays for purposes of calculating the 3–day mailing rule, and this Court agrees with the reasoning of those cases. *See, National Savings Bank of Albany v. Jefferson Bank*, 127 F.R.D. 218, 222 Fn. 7 (S.D.Fla.1989); *Vaquillas*, 844

F.Supp. at 1159; *Epperly*, 161 F.R.D. at 75, fn. 6; *Mullins*, 953 F.Supp. at 747, fn. 6. Moreover, Professors Wright and Miller criticize this approach as potentially "lead[ing] to an unjustifiable lengthening of the permitted time," such as a 19– or 20–day objection period, as opposed to the usual 17–day period. Wright and Miller, § 1171 at 519. Here, this approach would result in a 19–day period for filing objections, unduly long in the eyes of Professors Wright and Miller, and in the eyes of the Court.

Accordingly, the Court concludes that Kruger's objection should be struck as untimely. Which suggests another interesting procedural question: What are the consequences of failing to file a timely objection?

### III

■ In *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), the United States Supreme Court considered the consequences that may legitimately flow—both at the district court level and at the appellate level—from a party's failure to object to a magistrate's recommendation. *Thomas* involved a procedural rule adopted by the 6th Circuit which provided that a party's failure to file objections to a magistrate's report waived that party's right to appeal the district court's judgment based on that report. The petitioner challenged the rule, claiming it violated the Federal Magistrates Act ("FMA"), 28 U.S.C. § 636, as well as Article III and the Due Process Clause of the 5th Amendment to the United States Constitution. In rejecting that challenge, the Supreme Court concluded that the FMA "does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection." *Thomas*, 474 U.S. at 149, 106 S.Ct. at 472. Petitioner countered by suggesting that a failure to object waives only *de novo* review, and that the district court must still review the magistrate's report under some lesser standard. *Id.* The Court rejected that position, finding that the statute "simply does not provide for such review." *Id.* In short, the Court concluded that "[i]t does not appear that Congress intended to

require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Id.,* 474 U.S. at 150, 106 S.Ct. at 472. Indeed, there is legislative history supporting the contrary intention, insofar as guidelines before the Congressional Sub–Committee that formulated the relevant portions of the FMA stated that "[w]here a magistrate makes a finding or ruling on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time." *Id.,* 474 U.S. at 151, 106 S .Ct. at 473.

As for constitutional objections, the petitioner in *Thomas* argued that the rule permitted a magistrate to exercise Article III powers "because the rule forecloses meaningful review of a magistrate's report at both the district and appellate levels if no objections are filed." *Id.,* 474 U.S. at 153, 106 S.Ct. at 474. The Court rejected this argument as well:

> We find that argument untenable. The waiver of appellate review does not implicate Article III, because it is the district court, not the court of appeals, that must exercise supervision over the magistrate. Even assuming, however, that the effect of the Sixth Circuit's rule is to permit both the district judge and the court of appeals to refuse to review a magistrate's report absent timely objection, we do not believe that the rule elevates the magistrate from an adjunct to the functional equivalent of an Article III judge. The rule merely establishes a procedural default that has no effect on the magistrate's or the court's jurisdiction.

*Id.,* 474 U.S. at 153–54, 106 S.Ct. at 474.

■ Accordingly, the Supreme Court is of the opinion that a rule like the one in the 6th Circuit, which allows a district court to refuse to review a magistrate's report absent timely objection, violates neither the FMA nor the federal Constitution. And the 7th Circuit expressly adopted the 6th Circuit's approach in *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538 (7th Cir.1986). While the 7th Circuit recognizes an exception to this rule where the failure to file an objection

may be "excused" for "sufficient cause," *Id.* at 540, the Court sees no excuse or sufficient cause for Kruger's failure here, particularly when one considers that her counsel failed to object to a Recommendation that was itself advocating dismissal for a previous procedural default. Accordingly, the Court concludes that Kruger waived his right to object to Magistrate Goodstein's Recommendation.

**NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Kruger's objection to Magistrate Goodstein's Recommendation is struck as untimely; and

2. Magistrate Goodstein's Recommendation is adopted as the decision of this Court, and the matter is dismissed for failure to prosecute.

**SO ORDERED.**