Myrta L. HUNT, et al., Appellants,

v.

DENTAL CAPITAL
CORPORATION, Appellee.

No. 84–872.

District of Columbia Court of Appeals.

Argued April 11, 1985.

Decided Dec. 31, 1985.

James M. Fallon, Jr., Washington, D.C., for appellants.

Richard M. Kind, Baltimore, Md., for appellee.

Before BELSON and ROGERS, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

Appellants Myrta L. Hunt and Mack A. Warren appeal from an order of the trial court granting appellee Dental Capital Corporation summary judgment in its suit against them on an installment note. Appellants, makers of the instrument, contend that summary disposition was inappropriate because there existed a genuine dispute as to whether they undertook the obligation on behalf of their principal, Dental Associates, Inc., and thereby insulated themselves from personal liability. Appellants further argue that the trial court abused its discretion when it denied their subsequent motion to reconsider the summary judgment. We conclude that summary judgment was properly entered and the motion to reconsider was properly denied, and therefore affirm.

On February 22, 1982, appellants, who are dentists by profession, executed an installment note by which they became "jointly and severally" indebted to appellee in the principal amount of $35,000, with interest accruing at a rate of 22 percent per annum. A chattel mortgage was executed on March 22, 1982, which granted appellee a security interest in appellants' dental equipment, inventory, and other related property. Soon thereafter, appellants defaulted on the note and in February 1983, appellee repossessed their dental equipment pursuant to the terms of the chattel mortgage. The collateral was later sold and appellee received $16,281.29 in proceeds from the sale.

To recover the deficiency, that is, the principal balance owing less the proceeds from the sale of the collateral, appellee filed a complaint in Superior Court on February 7, 1984. By its complaint, appellee also prayed for accrued interest on the amount owed, attorneys fees, and costs. Following the submission of appellants' answer, appellee filed a motion for summary

judgment and attached thereto a statement of material facts and an affidavit from the credit manager of the corporation.[1] The motion was stamped as having been filed on March 16, 1984. Earlier, on March 12, a copy of the motion had been mailed to appellants' counsel.

Appellants filed an opposition to the motion for summary judgment on March 27, 1984, a day later than it was due, and appended their own affidavits. On that date, the trial court entered summary judgment in favor of appellee in the amount prayed for in its complaint. However, it does not appear that appellants' opposition came to the attention of the motions judge before he signed the summary judgment order.[2] Appellants subsequently moved the court to reconsider its March 27 order, arguing principally, under the authority of *Milton Properties, Inc. v. Newby*, 456 A.2d 349 (D.C.1983), that the trial court erred in treating appellee's motion as conceded on the ground that no timely opposition had been filed.[3] On May 18, 1984, the trial court denied appellants' motion for reconsideration without a hearing. Appellants then appealed to this court.

Appellants concede that their opposition to appellee's motion for summary judgment was untimely. Super.Ct.Civ.R. 12–I(k) provides that any party opposing a motion for summary judgment made pursuant to Super.Ct.Civ.R. 56 "may, within ten days *after service of the motion upon him,* serve and file a concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated." [Emphasis supplied.] Under Rule 12–I(k), if the opposing party does not so respond, "the court may assume that the facts as claimed by the moving party [in his statement of material facts] are admitted to exist without controversy...." Here, since appellee's statement of material facts was not controverted by appellants within the ten-day period,[4] the court was entitled to deem the facts admitted.

■ As appellants suggest, however, this does not dispose of the issue. Even when a motion for summary judgment goes unopposed, the trial court must, prior to ruling on the matter, "review the pleadings and other papers to determine whether the moving party is legally entitled to judgment." *Milton Properties, Inc., supra,* 456 A.2d at 354 (citing *Nader v. deToledano,* 408 A.2d 31, 48 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980)); *see Burt v. First American Bank,* 490 A.2d 182, 184–85 (D.C.1985); *Turner v. American Motors General Corp.,* 392 A.2d 1005, 1006 (D.C. 1978); Super.Ct.Civ.R. 56(c). Although there is no specific indication in the record of this case that such consideration was given by the trial court, we have examined the pleadings and other papers on file and conclude that there were no triable issues.

Appellants' dilatory opposition to summary judgment and supporting affidavits purport to raise a genuine issue regarding the capacity in which they signed the installment note. In this regard, appellants submit that they executed the note solely as officers of Dental Associates, Inc., and never intended to assume personal liability. Appellee counters that the instrument it-

---

1. *See* Super.Ct.Civ.R. 12–I(k); *see also* Super.Ct. Civ.R. 56.

2. The order itself makes no mention of appellants' opposition. It granted appellee summary judgment "upon consideration of the plaintiff's motion ..." only.

3. Appellants maintained that the trial court was required to consider the pleadings and all other papers on file, including their affidavits, before granting summary judgment.

4. As we noted, appellee's motion for summary judgment was mailed to appellants' counsel on March 12, 1984. Allowing three days for service by mail, Super.Ct.Civ.R. 6(e), appellants had until March 26, 1984, to file their opposition. Consequently, their March 27 filing was untimely. In their brief, appellants state that the opposition was five days late. Apparently, appellants overlooked Rule 6(e). For a discussion of Super.Ct.Civ.R. 6, *see Wallace v. Warehouse Employees Union #730,* 482 A.2d 801 (D.C.1984).

self, as well as the chattel mortgage, discloses no such representative undertaking. While neither party has directed us to authority from the State of Illinois on this subject—the installment note contains a choice of law provision which designates the statutes, laws, and decisions of Illinois as governing the "validity, enforcement, interpretation, [and] effect ..." of the note—under our construction of Illinois law, appellants' claim must fail.[5]

Section 3–403 of the Illinois Uniform Commercial Code (Ill.Rev.Stat. ch. 26, § 3–403 (1983)) provides as follows:

(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

(2) An authorized representative who signs his own name to an instrument
   (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;
   (b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.

Under this section,

if there is a question as to whether or not a person signed as an individual or as agent for a principal, parol evidence is admissible if, and only if, two criteria are met. First, the action must be between the immediate parties to the note. Secondly, there must be some indication of the existence of a principal or that the signator signed in a representative capacity.

*J. P. Sivertson & Company v. Lolmaugh,* 63 Ill.App.3d 724, 725, 20 Ill.Dec. 542, 543, 380 N.E.2d 520, 521 (1978) (citations omitted). Put another way, "section 3–403(2)(a) makes no provision for the admission of parol evidence where the instrument neither names the person represented nor shows that the signator signed in a representative capacity." *Schwarzwalder v. Waitkoss,* 101 Ill.App.3d 377, 380, 57 Ill. Dec. 83, 86, 428 N.E.2d 633, 636 (1981) (quoted in *Millstadt Drilling, Inc. v. Southern Illinois Exploration Co.,* 135 Ill. App.3d 85, 88, 90 Ill.Dec. 72, 75, 481 N.E.2d 872, 875 (1985)); *see Maywood-Proviso State Bank v. Sotos,* 95 Ill.App.3d 155, 158, 50 Ill.Dec. 560, 563, 419 N.E.2d 668, 671 (1981) ("[P]arol evidence is admissible to

5. Section 28:1–105(1) of the District of Columbia Uniform Commercial Code (D.C. Code § 28:1–105(1) (1981)) provides in part that "when a transaction bears a reasonable relation to the District and also to a state or nation the parties may agree that the law either of the District or of such state or nation shall govern their rights and duties." We have chosen to give effect to the parties' expressed intent to have Illinois law govern because it appears that the transaction in question in fact bears a reasonable relation to Illinois. Although the pleadings evidence that the installment note was actually executed in the District, the note itself calls for performance (repayment) in Illinois at the lender's place of business. *See generally* 1 R. ANDERSON, UNIFORM COMMERCIAL CODE § 1–105:25, at 131–32 (3d ed. 1981); *Triangle Underwriters,*

*Inc. v. Honeywell, Inc.,* 457 F.Supp. 765, 767–68 (E.D.N.Y.1978), *rev'd in part on other grounds,* 604 F.2d 737 (2d Cir.1979).

In any event, application of District of Columbia law to this case would not work to produce a different result. *See* ANDERSON, UNIFORM COMMERCIAL CODE, *supra* § 1–105:8, at 116, and cases cited therein. Section 28:3–403 of the District's commercial code (D.C. Code § 28:3–403 (1981)) is identical to the Illinois statute which we rely on *infra,* and this jurisdiction's sparse decisional law interpreting § 28:3–403 is consistent with the result we reach. *See Chidakel v. Blonder,* 431 A.2d 594 (D.C.1981); *Hilton International Company v. Robertson,* 112 Wash.D.L.Rptr. 1361 (D.C.Super.Ct. December 13, 1983); *see generally King v. Industrial Bank of Washington,* 474 A.2d 151 (D.C.1984).

show the capacity in which the person intended to sign the instrument where both the name of the person represented ... and the name of the person sought to be held

Mack A. Warren
Myrta L. Hunt

individually ... are on the instrument as possible signers.").

■ The instrument here was signed as follows:

---

/s/ Mack A. Warren          /s/ Myrta L. Hunt

If corporation, by (Vice) President; Affix Seal

Business Address   729 8th St., S.E.

City Washington   State D.C.   Zip Code   20003

---

The corporation's name does not appear at any place on the face of the installment note. Nor is it mentioned in the chattel mortgage by which appellants secured their indebtedness. The name does, however, appear on a guaranty agreement which, according to appellants, was printed on the reverse side of the original note.[6] The guaranty was executed in the following manner:

Address: 729 8th Street, N.E.
          Washington, D.C. 20003

Address:

Dental Associates, Incorp.

/s/ Mack A. Warren /s/ Vice President

/s/ Myrta L. Hunt /s/ Vice President

Cryptic handwritten notations were made on the guaranty next to and above "Dental Associates, Incorp." and look to be the initials of two persons and an abbreviated signature of appellant Hunt.

We are not persuaded that there are sufficient indicia of a representative undertaking to get this case past summary judgment. The face of the installment note[7] contains no reference to Dental Associates, Inc., nor the slightest suggestion that appellants entered the obligation on behalf of some principal. Inasmuch as the installment note here "neither names the person represented nor shows that the representative[s] signed in a representative capacity," § 3–403(2)(a) clearly operates to assign per-

sonal liability to appellants. *Compare Wolfram v. Halloway*, 46 Ill.App.3d 1045, 1047, 5 Ill.Dec. 264, 266, 361 N.E.2d 587, 589 (1977) ("[B]ecause the signature, 'Duane S. Wolfram (Manager)' shows a possible representative capacity, but does not name the person represented ... plaintiff's capacity to sue was a question of fact, not of law, which was subject to proof by evidence beyond the face of the note."); *Donaghey v. Executive Funding Corporation, supra* note 7, 45 Ill.App.3d at 953, 4 Ill.Dec. at 538, 360 N.E.2d at 474 (signature on a promissory note, "Executive Funding Corporation by Vincent P. Salvione, President," was made in a representative capacity). Nothing on the face of the instrument in the present case convinces us otherwise.[8]

---

**6.** A copy of the guaranty appears in the record as a separate document. At oral argument, appellants stated that this is so simply because of the manner in which the two instruments were copied.

**7.** Under Illinois law, we look to the *face* of the instrument to determine whether an individual has signed it in a representative capacity. *See Schwarzwalder v. Waitkoss, supra,* 101 Ill. App.3d at 380, 57 Ill.Dec. at 86, 428 N.E.2d at 636; *Kankakee Concrete Products Corp. v. Mans,* 81 Ill.App.3d 53, 56, 36 Ill.Dec. 217, 220, 400 N.E.2d 637, 640 (1980); *Donaghey v. Executive*

*Funding Corporation,* 45 Ill.App.3d 951, 953, 4 Ill.Dec. 536, 538, 360 N.E.2d 472, 474 (1977); *Perez v. Janota,* 107 Ill.App.2d 90, 91, 246 N.E.2d 42, 43 (1969).

**8.** In our view, the fact that appellants signed the instrument on a line above the legend "If Corporation, by (Vice) President; Affix Seal" does not suggest that it was signed in a representative capacity, particularly since the note in question is a standard form instrument. If, however, appellants had signed as "vice-presidents," we might be compelled to hold differently. *See Wolfram v. Halloway, supra.*

Even if we were to look beyond the instrument itself—a task not called for here under § 3–403 since the note is unambiguous[9]—we would reach the same conclusion. The guaranty agreement upon which appellants rely is a separate instrument evidencing different rights and obligations than the installment note. The fact that "Dental Associates, Incorp.," through its vice-presidents (appellants), executed the guaranty lends credence to appellee's assertion that the parties intended appellants to be personally obligated on the installment note. If the parties intended otherwise it would have been incongruous or, as one Illinois court put it, "a seemingly senseless redundancy,"[10] for Dental Associates, Inc. to have guaranteed its own debt.

Turning to the chattel mortgage, it is again clear that appellants acted on their own behalf. In the body of this security agreement, appellants have identified themselves as "debtor[s]." They acknowledge

It is also our opinion that appellants' use of their business address on the note, "729 8th St., S.E.," which is also the address of the entity Dental Associates, Inc., does not suggest a representative undertaking within the meaning of § 3–403. The standard form note calls for the maker of the instrument to include a business address and it is evident that appellants did just that.

the same at two different places on the signature portion of the mortgage instrument in a manner nearly identical to that on the installment note. Moreover, as we noted *supra*, at no place on the security agreement is "Dental Associates, Inc." mentioned.

For these reasons, the motions court correctly entered summary judgment in favor of appellee. And, since appellants' motion for reconsideration added nothing to their cause given our construction of the note and conclusion that appellee was entitled to judgment on the note as a matter of law, it was properly denied.

*Affirmed.*

9. *See Schwarzwalder v. Waitkoss, supra,* 101 Ill. App.3d at 380, 57 Ill.Dec. at 86, 428 N.E.2d at 636 (quoted in *Millstadt Drilling, Inc. v. Southern Illinois Exploration Co., supra,* 135 Ill. App.3d at 88, 90 Ill.Dec. at 75, 481 N.E.2d at 875).

10. *First Bank and Trust Company v. Post,* 10 Ill.App.3d 127, 131, 293 N.E.2d 907, 910 (1973).