**Catherine & David EARLY, James Walker, Sandra Wilson, Appellants,**

v.

**DORCHESTER HOUSE ASSOCIATES, Appellees.**

Nos. 91–CV–1090, 91–CV–1091 and 91–CV–1120.

District of Columbia Court of Appeals.

Argued April 15, 1993.

Decided Aug. 19, 1993.

Winston J. Yallery–Arthur, Washington, DC, for appellants.

Phillip L. Felts, Bethesda, MD, for appellees.

Before ROGERS, Chief Judge, and SCHWELB and FARRELL, Associate Judges.

PER CURIAM:

In this case, a misunderstanding by defendants' counsel apparently induced by the Clerk's Office resulted in what we conclude was a precipitous denial of defendants' motion for reconsideration (in effect a motion under Super.Ct.Civ.R. 59(e)). We therefore reverse and remand for renewed consideration of the motion.

I.

Plaintiffs are the owner/landlord of a residential apartment building. Defendants, appellants here, are tenants in that building currently engaged in litigation with the owner over proposed capital increases in the rent ceiling.[1] On August 2,

1. That litigation has apparently been stayed pending administrative proceedings now before the Rental Housing Commission. *See Drayton*

1991, the owner filed a motion to modify a protective order previously entered in the landlord and tenant action so as to reflect a 1991 rent increase of 5.4% authorized by the rent administrator. A hearing was requested for August 9, 1991, but on that day the parties filed a joint praecipe requesting a continuance until August 23. The reason stated was that "defendants plan to review housing inspector reports which are unavailable at this time. If defendants intend to defend [against] the motion [to modify] based on code violations, defendants shall subpoena housing inspectors." Appellants did not file a written opposition to the motion to modify, and did not subpoena the housing inspector(s) to attend the August 23 hearing. On that day, the matter came before Judge Kessler for a hearing. Appellees' counsel was present; counsel for appellants was not.

Judge Kessler observed that the record contained no opposition to the motion to modify,[2] and that the matter had already been continued once. Counsel for appellees also pointed out the conditional nature of appellants' response to the motion in the joint praecipe ("*If* defendants intend to defend ... based on code violations" (emphasis added)), and the fact that the housing inspector had not been subpoenaed for the hearing and was not present. On the other hand, the judge learned from her courtroom clerk that appellants' counsel, Mr. Yallery–Arthur, had telephoned the courtroom that morning stating that he was ill and requesting a continuance until the following Friday. Balancing all of these considerations, the judge granted the motion to modify the protective order but instructed appellees' counsel to inform Mr. Yallery–Arthur that he could file a motion for reconsideration, which—as the judge stated—"would have to come back to me...."

On September 4, 1991, appellants filed a motion to reconsider and vacate the August 23 order, asserting that their attorney had not been present that day because of ill-

ness. The motion further stated that "[t]he initial continuance ... [had been] agreed on by both counsel when defense counsel insisted on seeing the housing inspector[']s reports, which were then incomplete. Those reports are now available and, all told, are comprised of forty-eight (48) pages of deficiencies." The motion asked the court to reconsider Judge Kessler's order and to "allow the original motion [to modify] to be heard on the same day that this motion is heard." It requested a hearing date of September 10.

As Judge Kessler was apparently no longer sitting in the Landlord and Tenant Branch, the motion was heard by Judge Wolf on September 10. Mr. Yallery–Arthur explained his absence from the hearing on August 23, and also the fact that the housing inspector's report had not been prepared by that date and so he had not subpoenaed the inspector for that hearing. On the other hand, counsel had planned "to bring the Housing Inspector in" for the present hearing, together with the report, but two days earlier he had been informed by the Clerk's Office that the motion to reconsider would have to be ruled on by Judge Kessler, and that all Judge Wolf could be asked to do in the Landlord and Tenant hearing on September 10 "would be to stay the [increased] protective order payment until Judge Kessler can make a decision on [the motion to reconsider]." Further complicating matters, according to appellants' counsel, was that on the morning of the hearing Judge Kessler's chambers had indicated that she would not be handling the motion after all, but that "it can be done down here [in Landlord and Tenant]."

Counsel did not have with him the housing inspector report, and when Judge Wolf noted that this was "an important part" of appellants' motion to reconsider, counsel again explained that the Clerk's Office had given him to believe "the only thing we

*v. Poretsky Management, Inc.,* 462 A.2d 1115 (D.C.1983).

**2.** *But see* Super.Ct. L & T R. 5(a) (stating that "[i]n this [the Landlord and Tenant] Branch it

shall not be necessary for the defendant to file any answer ... or other defense in writing ...").

were going to discuss with the Court today was the question of [staying] the [increase in the] protective order payment ... until Judge Kessler can make that decision." Judge Wolf said nothing to indicate that he disbelieved this representation or counsel's explanation for his absence from the August 23 hearing. But in the absence of proof before him of actual housing code violations, the judge was not satisfied that there had been any "injustice" in the order increasing the protective order, and he denied the motion for reconsideration.

## II.

■ Appellants challenge both the order of Judge Kessler granting the motion to increase the protective order and the order of Judge Wolf denying their motion for reconsideration. We find it unnecessary to consider whether Judge Kessler's order increasing the amount despite counsel's absence from the hearing was proper, because appellants' argument that Judge Wolf acted too hastily in denying the motion to reconsider is compelling. Appellants' motion to reconsider asserted that they now possessed the housing inspector's reports and, on the basis of code violations listed therein, were prepared to challenge the basis for the proposed increase. *See Habib v. Thurston*, 517 A.2d 1, 18–19 (D.C. 1985). The motion specifically cited Judge Kessler's invitation to them, in effect, to seek reconsideration if in fact (as was not apparent to her on August 23) they opposed the increased payment. The motion was also filed promptly, within the time for a motion to alter or amend under Super.Ct.Civ.R. 59(e).[3] It is true, as appellees argue, that appellants did not append to their motion or otherwise submit to the court before the hearing the housing inspection report on which the motion was based. But, as appellants' counsel explained to Judge Wolf, they did not regard this as necessary given the normally brief time "from the point of filing [of a motion] to the hearing" in the Landlord and Tenant Branch,[4] and their intent "to bring the Housing Inspector in" to testify. That plan of action was then aborted by the information counsel purportedly received from the Clerk's Office that the September 10 hearing could not deal with the merits of the motion to reconsider. As explained earlier, Judge Wolf did not dispute that counsel had in fact been given this misleading information.

■ In these circumstances, where it is uncontested that (1) appellants had made clear their intent to dispute the proposed increase in the protective order based on the now-available inspection report, and (2) the court itself through the Clerk's Office may have contributed to appellants' inability to demonstrate an "injustice" at the September 10 hearing, *see Ouriaghli v. Moore*, 621 A.2d 392, 394–95 (D.C.1993),[5] we conclude that appellants should have been given brief additional time to make their case for reopening Judge Kessler's decision. They showed no lack of diligence in seeking reconsideration, and the court's own role (*via* the misleading notice) in short-circuiting that process is strong reason why Judge Wolf's denial should not be the final word.[6] Appellants must be al-

3. As the August 23 order was entered outside the presence of appellants and their counsel, and Judge Kessler made no finding of default on appellants' part for their counsel's failure to appear, the time for a motion to alter or amend under Rule 59(e) was extended by three days by operation of Rules 77(d) and 6(e). Denial of the motion to reconsider made both orders reviewable on appeal. *Perry v. Sera*, 623 A.2d 1210, 1214 n. 10 (D.C.1993).

4. L & T R. 13(c) confirms this point indirectly by stating that "[m]otions filed in this Branch shall be heard not earlier than the 5th day after service of the motion...."

5. *See also Robinson v. Evans*, 554 A.2d 332, 335 & n. 10 (D.C.1989) (citing cases "all involving some affirmative conduct on the part of the trial court (or its clerk) which misled the appellant," and holding that, "[w]hen [an] appellant has been affirmatively misled into delaying the filing of a notice of appeal by some action or conduct of the trial court, the appeal will be allowed if the notice of appeal is timely filed after the misleading action has been corrected").

6. Appellees contend that, even after the denial of the motion to reconsider, appellants were free to move for reduction of future protective order payments, citing the alleged housing code violations. Such a motion, however, would not

lowed to make their case on the merits for reconsideration of Judge Kessler's order.

*The order denying the motion for reconsideration is reversed.*

provide a remedy for the past payments required by Judge Kessler's order, nor is it obvious that appellees would not have opposed such a motion by arguing the preclusive effect of the previous denial.