Julia FAGGINS, Appellant,

v.

David J. FISCHER, M.D., Appellee.

No. 01–CV–1328.

District of Columbia Court of Appeals.

Argued Dec. 16, 2002.
Decided June 3, 2004.

Keith W. Donahoe, Greenbelt, Md, for appellant.

Alfred F. Belcuore, for appellee.

Before STEADMAN, SCHWELB and WASHINGTON, Associate Judges.

PER CURIAM.*

At the first trial of this survival action for medical malpractice, the jury found

---

\* Part I of this opinion was authored by Judge Steadman. Part II was authored by Judge

that the defendant, David J. Fischer, M.D., negligently administered excessive amounts of anti-psychotic medication to Frederick Moten, the twenty-seven-year-old son of the plaintiff, Julia Faggins,[1] thus causing Moten's death from neuroleptic malignant syndrome (NMS). The jury awarded Ms. Faggins $1,600,000 in compensatory damages for Moten's alleged pain and suffering. Counsel for Dr. Fischer filed a post-trial motion for a new trial pursuant to Super. Ct. Civ. R. 59. The trial judge granted the motion and ordered a new trial. A second trial resulted in a verdict and judgment in Dr. Fischer's favor.

■ Ms. Faggins has appealed from the judgment, contending that the second trial should never have taken place.[2] She argues, as she did in the trial court, that the Rule 59 motion was untimely. In the alternative, she asserts that even if the motion was timely, the trial court abused its discretion in granting a new trial. We agree with the trial court that the Rule 59 motion was timely and hold that the trial court did not abuse its discretion. Accordingly, we affirm the ultimate judgment in favor of Dr. Fischer.

## I.

We initially address the issue of the timeliness of the new trial motion, which could be dispositive of this appeal. If it was untimely, the trial court lacked jurisdiction to order a new trial, and the original judgment in favor of Ms. Faggins must be reinstated. See *Circle Liquors, Inc. v. Cohen,* 670 A.2d 381, 385 (D.C.1996) (holding that the trial court lacks authority to extend the ten-day period). Thus, if Ms. Faggins is correct on the timeliness issue, we would not reach the "merits" issue whether the trial court abused its discretion in granting a new trial.

The verdict of the first jury was returned in open court on Monday, August 23, 1999. Judgment was entered on the docket and mailed to the parties by the clerk three days later, on Thursday, August 26. By the terms of Super. Ct. Civ. R. 59(b),[3] the defendant had ten days thereafter within which to file the motion. In calculating the ten days from the entry of judgment, the three days prior to docketing are not counted, and intervening Saturdays, Sundays, and legal holidays (here Labor Day, September 6, 1999) are excluded. See Rule 6(a); *Affordable Elegance Travel, Inc. v. Worldspan, L.P.,* 774 A.2d 320, 331 (D.C.2001).[4] As reflected on the calendar for August and September 1999, set forth below, the tenth day after the judgment was entered, if determined as described above, was on Friday, Septem-

---

Washington.

1. Mr. Moten had been suffering from bipolar disorder.

2. "The grant of a new trial was not a final and appealable order, but [as] there [was] a new trial with an adverse result to appellant[ ], [she may] ... appeal[ ] from the judgment in the second trial and assign[ ] as error the grant of the new trial." *Fisher v. Best,* 661 A.2d 1095, 1097 n. 3 (D.C.1995) (quoting *Desmond v. Robertson,* 211 A.2d 775, 776 (D.C.1965)) (alterations added).

3. All references in this opinion to a Rule is to the Superior Court Rules of Civil Procedure as they read in 1999, even though the present tense is used. Significant amendments have subsequently been made to the rules relevant to this decision. See note 13, *infra.*

4. Super. Ct. Civ. R. 6(a) provided in pertinent part:
 When the period of time prescribed or allowed [by these rules, by order of Court, or by any applicable statute] is less than 11 days, intermediate Saturdays, Sundays and legal holidays [including Labor Day] shall be excluded in the computation.

ber 10.[5]

## August 1999

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |
| | | | | | | |

## September 1999

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

Defendant's motion was not filed until September 15. Thus, the timeliness of defendant's motion depends upon the applicability and interpretation of the mailing provision contained in Rule 6(e). That rule in 1999 read as follows:

(e) *Additional time after service by mail.* Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period.

If the extra period for mailing provided in Rule 6(e) was applicable here, as the defendant contends, he was allowed three additional mailing days (beyond the ten-day period specified in Rule 59(b)) to file

**5.** Monday, September 6, was the holiday of Labor Day.

his motion. The defendant further contends that the three additional days for mailing permitted by Rule 6(e) are *business* days, with Saturdays and Sundays excluded. If the defendant is right, then the three-day mailing period excluded September 11 and 12, the third mailing day was September 15, and the motion (which was filed on that day) was therefore timely. According to the plaintiff, on the other hand, the three additional mailing days (if applicable at all) are *calendar* days, and the motion was required to be filed on Monday, September 13, and was therefore two days late.

In his order granting the defendant a new trial, the trial court held that the motion was timely. The court wrote that "because the three days afforded by Rule 6(e) constitute a discrete 'period of time,' Rule 6(a), they too exclude any intervening holiday, Saturday, or Sunday." This entire case—*i.e.*, the viability of a jury award of $1,600,000—turns in the first instance on whether the trial court's interpretation of Rule 6 was correct.

#### A.

■ We examine first whether Rule 6(e) is applicable at all to defendant's motion. A close examination of Rule 6(e) might well raise doubts whether, by its literal terms, it applies at all to a new trial motion. The time prescribed for filing a new trial motion under Rule 59(e) is not dependent upon the "service of a notice or other paper upon the party." Rather, it begins to run "after entry of the judgment." For this reason, our sibling federal court has squarely held that the mailing extension of the identical federal rule 6(e) is simply not applicable to motions for a new trial. *Derrington–Bey v. District of Columbia Dept. of Corrections*, 309 U.S.App.D.C. 132, 133–34, 39 F.3d 1224, 1225–26 (1994).[6] Our case law, however, had already taken a different turn. As held most notably in *Wallace v. Warehouse Employees Union # 730*, 482 A.2d 801, 805–08 (D.C.1984), where the Superior Court clerk is required by Rule 77(d) to serve a notice of the entry of a judgment by mail upon parties not in default, the provisions of Rule 6(e) apply and three additional days are added to the ten-day period of Rule 59(e).[7]

Plaintiff argues, however, that by its terms, Rule 77(d) did not apply in the circumstances here. Rule 77(d) in 1999 read in pertinent part as follows:

(d) *Notice of orders or judgments.* Immediately upon the entry of an order or judgment signed or decided out of the presence of the parties or their counsel, the Clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing.

Since the jury verdict was announced in open court, plaintiff asserts, the defendant had the benefit of the full ten days provided in Rule 59(e) and Rule 6(e) therefore

---

**6.** The opinion cites to earlier cases from three other circuits to the same effect.

**7.** As discussed at some length in *Wallace,* this approach to the interrelation between Rules 6(e) and 77(b) (and their similar predecessor versions) was of long standing, going back at least to *United Retail Cleaners & Tailors Ass'n of D.C. v. Denahan*, 44 A.2d 69 (D.C.1945). Our subsequent cases have uniformly applied the Rule 6(e) extension in such circumstances. *See, e.g., Early v. Dorchester House*

*Assocs.*, 629 A.2d 583, 585 n. 3 (D.C.1993). The *Wallace* court specifically considered and rejected the federal cases holding that Rule 6(e) did not apply to judgments and thus did not extend the time for filing a motion under Rule 59(e). Although *Derrington–Bey, supra,* had not yet been decided by the D.C. Circuit, *Wallace* did note that a First Circuit case to the same effect had been cited with approval in a D.C. Circuit opinion. *Wallace,* 482 A.2d at 806 n. 16.

didn't apply. We cannot agree. Rule 6(e) requires that the clerk serve notice of the entry of judgment in all cases where the judgment was "signed or decided out of the presence of the parties." Either condition triggers the obligation to send notice. The verdict is not the judgment. Under Rule 58, a judgment is "effective" only when entered on the docket pursuant to Rule 79(a). The ten-day period to file a Rule 59(e) motion begins to run only upon such an entry. Here, although the judgment contains an internal date of August 23, the day of the verdict, it is a judgment signed by the clerk, not the trial judge, and contains stamps showing that it was filed on August 25 and docketed and mailed on August 26. There is nothing in the record to show that the judgment was "signed" in the presence of the parties. Indeed, the stamp marks on the judgment and the fact of mailing suggest that it was not.[8] Thus, the clerk was required by Rule 77(d) to serve notice of the entry of judgment and, under *Wallace*, the extension period of Rule 6(e) was applicable to the defendant.[9]

### B.

We now turn to the determinative procedural issue; namely, whether the

"3 days [that] shall be added to the prescribed period" provided in Rule 6(e) means three calendar days, as argued by the plaintiff, or three business days, as argued by the defendant. Otherwise put, the issue is the applicability of the provision in Rule 6(a) that "when the period of time prescribed or allowed [by these rules, by order of Court, or by any applicable statute] is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." If plaintiff is correct, the time within which defendant had to file his 59(b) motion expired on September 13. If defendant is correct, the time expired on September 15, the very day that defendant filed his motion. Whether the three-day mailing extension in rule 6(e) refers to calendar days (as the plaintiff argues) or to business days (as the defendant maintains) is a question of law, and we consider it *de novo*. *Technical Land, Inc. v. Firemen's Ins. Co.*, 756 A.2d 439, 443 (D.C.2000).

*Wallace* did not need to address this precise question, because, under the facts before it and consistent with its holding, nothing turned on the distinction.[10] However, the reasoning and language of the

**8.** *See, e.g., Cobb v. Standard Drug Co., Inc.*, 453 A.2d 110, 111 (D.C.1982) (burden is on appellant to present this court with a record sufficient to show affirmatively that error occurred).

**9.** This conclusion is consistent with the only somewhat similar case that we are aware of in our jurisdiction. In *Turcios v. United States Serv. Ind.*, 680 A.2d 1023 (D.C.1996), the jury verdict was rendered on March 15 but the judgment was not entered and mailed until March 29. Albeit without discussion of a point not essential for the appeal, we agreed with appellant's analysis that added three days to the ten-day period for a Rule 59(e) motion since the judgment was "rendered outside of the presence of the parties." 680 A.2d at 1026.

It is true that *Wallace* makes mention of a purpose of Rule 6(e) to give the litigant who receives notice by mail the same number of working days as the litigant who is present in court when the action is taken or who receives service in person. But we think it goes too far to confine application of Rule 6(e) to precisely those circumstances in contravention of the language of the rule itself. *Inter alia*, notice of entry of the judgment gives notice to all parties of the precise timing of the filing deadline. See note 13, *infra*.

**10.** The ten-day period, exclusive of Saturdays, Sundays, and holidays, ended on a Monday. Thus, with a three-day extension, the last day for filing was on a Thursday (no holiday intervened).

court in that case leads us to adopt the defendant's position. In *Wallace,* the issue in essence was whether the ten days provided for in Rule 59(e) and the three-day addition provided for in Rule 6(e) should be combined into a single "period of time" of thirteen days, so that Saturdays, Sundays and legal holidays would be included in the computation. The court held that no such combination should take place. The court chose to follow the rule which "treats the time as two separate periods, here ten days (Rule 59(e)) and three days (Rule 6(e))." 482 A.2d at 808. By separating the time into "two separate periods," the court determined that the ten-day period of Rule 59(e) invoked the provision of Rule 6(a) excluding Saturdays, Sundays, and legal holidays. By the same reasoning, the other "separate period," the three days provided in Rule 6(e), would be likewise computed. As the court said in describing its holdings, "Rule 6(e) is applicable to Rule 59(e) motions and each period of time under these rules is to be considered separately in computing time under Rule 6(a)." 482 A.2d at 802.

■ *Wallace* spoke of the need to construe the rules liberally and to interpret their liberal intent. 482 A.2d at 809. More generally, it is fair to say that when a court is construing rules which, once applicable, must be inflexibly applied, the most liberal interpretation of time limits reasonably consistent with the language at issue and prior case law governing such interpretation should be the norm. Here, in particular, the time limit at issue is that for filing a Rule 59(e) motion. Unlike most time periods set forth in the rules, the ten-day time limit for filing such a motion is explicitly not subject to enlargement by the trial court under Rule 6(b).[11]

A similar approach may be seen in our approach to determining the period of time within which an appeal must be filed, a strict time limit which we have held to be jurisdictional. *See, e.g., Frazier v. Under-due–Frazier,* 803 A.2d 443, 444 (D.C.2002) (per curiam). Notably, in *Singer v. Singer,* 583 A.2d 689 (D.C.1990) (per curiam), we were faced with an appeal that had been filed thirty-six days after the entry of the judgment on the docket. D.C.App. R. 4(a)(1) required a notice of appeal to be filed within thirty days after entry of the judgment and therefore on its face the appeal was too late and we lacked jurisdiction to hear it. The issue before us was the application of D.C.App. R. (4)(a)(3), which provided:

When a judgment or final order is entered or decided out of the presence of the parties and counsel, such judgment or order shall not be considered as having been entered, for the purposes of calculating the time for filing a notice of appeal ... until the fifth day after the Clerk of the Superior Court has made an entry on the docket ... reflecting the mailing of notice by that clerk.

Since, in the appeal in question, the order had been entered out of the presence of the parties and counsel, the question was how to compute the total time allowed. We noted that "the five days can either be added to the thirty-day period, allowing thirty-five days to note an appeal, or each period can be computed separately." With the latter approach, the provision of D.C.App. R. 26(a) became applicable; namely, that "[w]hen the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays and legal holidays shall be excluded." Citing the *Wallace* case, we held that "follow-

11. To be sure, Rule 6(e) is subject to application in a myriad of various time limits, many of which may be subject to extension. But

*Wallace* was decided in the context of a Rule 59(e) motion and we interpret its language accordingly.

ing the reasoning of *Wallace,* we conclude the five days provided by D.C.App. R. 4(a)(3) and the thirty days prescribed by D.C.App. R. 4(a)(1) should be treated as two separate time periods." 583 A.2d at 691. Accordingly, we excluded Saturdays and Sundays from the five-day time period and thereby rendered the appeal timely by a single day.[12]

It is quite true, as the dissent fairly notes, that federal cases have construed the comparable provision of Fed. R. Civ. Proc. 6(e) to mean three calendar days, including the decision by the D.C. Circuit in *CNPq–Conselho Nacional v. Inter–Trade, Inc.,* 311 U.S.App.D.C. 85, 87, 50 F.3d 56, 58 (1995) (per curiam), heavily relied upon by the dissent. That is the same court whose holding as to the applicability of Rule 6(e) at all to Rule 59(e) motions we effectively rejected in *Wallace,* so that the normally desired uniformity has already been breached. Furthermore, in the very language quoted by the dissent from that case, the D.C. Circuit rejects the concept that Rule 6(e) establishes a separate "period of time," a point of view contrary to the language both of *Wallace* itself and of *Singer.* With all respect to the

federal contrary holdings, we deem ourselves guided by the language and the spirit of the precedents interpreting our own rules.[13]

Since the trial court correctly ruled that the defendant's motion under Rule 59(e) was timely filed, we now turn to Ms. Faggins' challenge to the merits of the trial court's grant of a new trial.

## II.

■ The trial court granted Dr. Fischer's motion for a new trial pursuant to Super. Ct. Civ. R. 59. In granting the motion, the trial court concluded that "the jury's verdict was counter to the great weight of the evidence and exceeded in amount what was reasonable under the circumstances of this case." Specifically, the trial court found that the testimony of the plaintiff's expert witness, Dr. Gerard Addonizio, concerning Mr. Moten's ability to consciously perceive pain during the time he suffered from neuroleptic malignant syndrome (NMS) was significantly outweighed by evidence at trial that "[Mr. Moten] was not, while hospitalized, con-

12. Unlike what was done in *Wallace,* under the wording of 4(a)(3), the five-day period is placed at the beginning rather than the end of the primary time period.

Ms. Faggins refers us to two cases which, in her view, demonstrate that the three days for mailing have been treated as calendar days. *Lynch v. Meridian Hill Studio Apts., Inc.,* 491 A.2d 515, 517 n. 2 (D.C.1985); *Hunt v. Dental Capital Corp.,* 503 A.2d 205, 206 n. 4 (D.C. 1985). In neither case, however, was the issue now before us presented or in dispute. *See Umana v. Swidler & Berlin, Chartered,* 669 A.2d 717, 720 n. 9 (D.C.1995).

13. It should be noted that significant amendments have been made to the relevant Superior Court rules since the time of this case. Rule 77(d) now provides that "[i]mmediately upon the entry of an order or judgment, the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5(b)," so

that such a notice will be mailed without regard to whether the order or judgment was signed or delivered out of the presence of the parties. Even more significantly, Rule 6(e) has been amended to read as follows: "(e) *Additional time after service under Rule 5(b)(2)(B), (C), or (D).* Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party under Rule 5(b)(2)(B), (C), or (D), 3 days shall be added to the prescribed period." This amendment to Rule 6(e) comports with a like amendment made to the comparable federal rule. Given these two amendments to the Superior Court rules, it is most unlikely that the procedural issues discussed in this section will recur, at least in this form.

sciously aware of pain nor capable of experiencing the agony Dr. Addonizio described." Based on this finding, the trial court concluded that a substantial amount of the verdict was unsecured by a firm and reliable factual referent because the verdict was largely based on conjecture.

A trial court has "broad latitude" in ruling on a motion for new trial, *United Mine Workers of America v. Moore,* 717 A.2d 332, 337 (D.C.1998) (citing *Gebremdhin v. Avis Rent–A–Car Sys., Inc.,* 689 A.2d 1202, 1204 (D.C.1997)); therefore, we review the trial court's decision to grant a new trial for an abuse of discretion. *United Mine Workers of America,* 717 A.2d at 337. The trial court has "the power and [the] duty to grant a new trial if the verdict[ ] [is] against the clear weight of the evidence, or if for any reason or combination of reasons justice would miscarry if [the verdict] were allowed to stand." *Gebremdhin,* 689 A.2d at 1204 (emphasis and alterations in original) (quoting *Fisher v. Best,* 661 A.2d 1095, 1098 (D.C.1995)). In ruling on a motion for new trial, the trial court must consider "all the evidence, both favorable and unfavorable." *Lyons v. Barrazotto,* 667 A.2d 314, 324 (D.C.1995) (citation omitted). "Where the court grants a new trial because the verdict is against the clear weight of the evidence, we will scrutinize to assure that the trial court did not simply accept one version of the facts over another." *Id.* at 324–25 (citation omitted). However, when acting on a motion for new trial the trial judge need not view the evidence in the light most favorable to the non-moving party. "Indeed, the judge can, in effect, be the 'thirteenth juror;' he [or she] may 'weigh evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'" *Etheredge v. District of Columbia,* 635 A.2d 908, 917 n. 11 (D.C. 1993) (citations omitted).

After reviewing the record in this case, we are satisfied that the trial judge did not abuse his discretion in granting Dr. Fischer's motion for new trial. The only evidence offered in support of the claim for pain and suffering was the expert testimony of Dr. Addonizio. He testified that based on his review of certain notes contained in Mr. Moten's hospital records, it was his expert opinion that Mr. Moten was able to and did experience conscious pain and suffering caused by NMS. Specifically, Dr. Addonizio testified that because notes made by Mr. Moten's nurses and/or physician attendants refer at various times after the onset of NMS to Mr. Moten being "awake (eyes open)," his eyes being "shut tight when an exam was attempted," his "respond[ing] to powerful stimuli," his being in a "restless" or "agitated" state, his "moving his extremities" including his "arms and legs," and his "show[ing] improvement in level of consciousness," Mr. Moten endured 24 to 48 hours of conscious physical pain and mental suffering. Based on this testimony, Ms. Faggins argues that the jury award of $1.6 million was "within the reasonable range within which the jury may properly operate in awarding Survival Act damages."

While Dr. Fischer does not dispute the accuracy of the observations reflected in the hospital notes regarding Mr. Moten's reaction to certain stimuli, he argues that Dr. Addonizio's conclusion based on those notes, that Mr. Moten consciously experienced pain for 24 to 48 hours, is pure speculation and unsupported by the record. We agree. There is no evidence in the record to support Dr. Addonizio's opinion that Mr. Moten consciously suffered pain for any period of time, let alone, a prolonged sustained period of time. At most, the hospital notes relied upon by Dr.

Addonizio support a conclusion that at various discrete times during the relevant 24 to 48 hour period between the advent of NMS and Mr. Moten's death, Mr. Moten was able to respond to certain stimuli. Nothing in those medical records indicate that Mr. Moten said or did anything that signaled to the hospital personnel on duty that he was consciously aware of the severity of his illness or that he was in severe pain at any time. Further, Dr. Addonizio's expert opinion was undermined by portions of his own testimony as well as the testimony of Drs. Brown, Caroff, Cornish, and Fischer. All of them testified that NMS directly and adversely affects a victim's ability to consciously perceive his or her surroundings, including discomfort and pain. In addition to generalized testimony about how unlikely it would be for a patient afflicted with NMS to consciously suffer pain, Dr. Cornish, one of Ms. Faggin's experts, testified that patients who suffer from NMS may not perceive body heat and appear comatose. In a case like this one, where the circumstances that caused the decedent's injuries, as well as the injury itself, are not so commonplace as to allow a jury to reach a conclusion on pain and suffering based on life experiences alone, and given that the testimonial evidence that Mr. Moten suffered conscious pain is based on mere speculation and is contrary to the great weight of the evidence, we are satisfied that the trial court did not abuse its discretion in granting the motion for a new trial.

 Further, while the trial court did not explain its rationale for concluding that the damages awarded by the jury for pain and suffering were excessive, it is clear from the evidence presented in the case that the verdict was predicated entirely on Dr. Addonizio's testimony that Mr. Moten

was consciously aware of his impending death and suffered from excruciating pain for approximately 24 to 48 hours before his death. However, the hospital notes on which Dr. Addonizio relies in reaching that conclusion, even viewed in a light most favorable to Ms. Faggins, only supports the conclusion that Mr. Moten may have been able to experience conscious pain and suffering intermittently during the 24 to 48 hours that he was afflicted with this unfortunate illness. Thus, because the jury verdict was based on unsupported conjecture, the trial court did not abuse its discretion when it granted Dr. Fischer's motion for a new trial on the alternative grounds that the damages "exceed[ed] the amount reasonable under the circumstances of this case."

For the foregoing reasons, there being no error or abuse of discretion in the order granting a new trial following the first trial, the judgment for the defendant in the second trial is

*Affirmed.*

SCHWELB, Associate Judge, dissenting.

I am unable to agree with the majority's conclusion that Dr. Fischer's Rule 59(e) motion was timely. Accordingly, I respectfully dissent.[1]

**I.**

As my colleagues point out, the question whether the three-day mailing extension in Rule 6(e) refers to calendar days (as the plaintiff argues) or to business days (as the defendant maintains) is one of law, and we must consider it *de novo*. This precise issue has never been decided or directly addressed by this court. Each party in-

---

1. On the merits, which cannot be reached under my view of the case, I agree with the

majority that the trial judge did not abuse his discretion in setting aside the verdict.

vites our attention to authorities in which, it claims, weekends were included in the three-day period (in cases cited by Ms. Faggins),[2] or were not included (in decisions cited by Dr. Fischer),[3] but the specific issue now before us was not explicitly contested or addressed in any of these cases. "The rule of *stare decisis* is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question." *Fletcher v. Scott,* 201 Minn. 609, 277 N.W. 270, 272 (1938), *quoted in Murphy v. McCloud,* 650 A.2d 202, 205 (D.C.1994).

Although there is no controlling District of Columbia precedent, it is undisputed, and my colleagues in the majority acknowledge, that the identical federal rule—Rule 6(e) of the Federal Rules of Civil Procedure—has been consistently construed as providing a mailing extension of three *calendar* days, not three *business* days. *See, e.g., CNPq–Conselho Nacional de Desenvolvimento Científico e Tecnológico v. Inter–Trade, Inc.,* 311 U.S.App. D.C. 85, 87, 50 F.3d 56, 58 (1995) (per curiam) (hereinafter *Conselho Nacional*); *Vaquillas Ranch Co. v. Texaco Exploration & Prod., Inc.,* 844 F.Supp. 1156, 1159 (S.D.Tex.1994); *Nat'l Sav. Bank v. Jefferson Bank,* 127 F.R.D. 218, 222 n. 7 (S.D.Fla.1989); *Nalty v. Nalty Tree Farm,* 654 F.Supp. 1315, 1318 (S.D.Ala.1987); *see also* MOORE'S FEDERAL PRACTICE, § 6.05[2] at 6.32–33 (3d ed. 2001) (stating that the courts have declined to adopt the theory that the three-day extension for mailing in Federal Rules of Civil Procedure 6(e) is itself a "period of time" within the meaning of Rule 6(a) from which weekends and holidays should be excluded); BENDER'S

FEDERAL PRACTICE FORMS 6–8 to 6–9 (Lexis ed. 2001) ("The automatic three day extension is an extension of calendar days, not three business days."). "We construe the rules of the Superior Court in light of the corresponding federal rules, unless such interpretation is contrary to binding precedent." *Lynch,* 491 A.2d at 518 n. 4 (citations omitted). There is no binding precedent, contrary or otherwise, in this jurisdiction.

In *Conselho Nacional,* a decision of the United States Court of Appeals for the District of Columbia Circuit, the court resolved the precise point here at issue as follows:

Rule 6(a) sets forth the method for "computing any period of time prescribed or allowed by these rules." Rule 6(e) does not, we think, establish a "period of time" within the meaning of Rule 6(a). The latter apparently contemplates periods of time bounded by specific acts or occurrences—such as the period of time between service of a magistrate's judgment and the filing of objections. Rule 6(e) does not, in our view, establish a "period of time" in this sense. It provides for a three-day extension to a "prescribed period," and that extension is not in itself a period governed by Rule 6(a)'s counting instructions for periods under eleven days. *See Tushner v. United States District Court,* 829 F.2d 853, 855–56 (9th Cir. 1987); *National Savings Bank of Albany v. Jefferson Bank,* 127 F.R.D. 218, 222 n. 7 (S.D.Fla.1989); *Nalty v. Nalty Tree Farm,* 654 F.Supp. 1315, 1316–17 (S.D.Ala.1987); 4A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1171, at 516–20 (2d ed. 1987). In computing

---

2. *Hunt v. Dental Capital Corp.,* 503 A.2d 205, 206 n. 4 (D.C.1985); *Lynch v. Meridian Hill Studio Apts., Inc.,* 491 A.2d 515, 517 n. 2 (D.C.1985).

3. *E.g., Hahn v. District of Columbia Water & Sewer Auth.,* 727 A.2d 317, 319 (D.C.1999).

time under both 6(a) and 6(e), the three-day addition for mailing should have no effect in determining the run of the pre-. scribed period, such as the ten-day period for objection under Rule 72. When the Rules provide for a period of less than eleven days, its run should be computed excluding weekends and holidays, pursuant to Rule 6(a), *and the three-day extension—counting weekends and holidays—should then be added at the end.*[4]

311 U.S.App.D.C. at 87, 50 F.3d at 58 (emphasis added). Dr. Fischer makes no attempt, nor can he, to distinguish *Conselho Nacional,* but argues that the decision is not binding on us and is not persuasive. My colleagues in the majority likewise decline to follow *Conselho Nacional.*

Although it is true, as Dr. Fischer maintains, that opinions of the local United States Court of Appeals are no longer binding on this court, *see M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971), we treat them as highly persuasive. I would do so here, in part, because we should not, in the absence of a compelling reason, create the kind of confusion that would arise if identical language in the federal and Superior Court rules were treated as meaning something quite different by courts located across the street from one another, so that, notwithstanding their textual identity, the Superior Court rule would accept as timely a motion which would be denied as untimely by the United States District Court. *Cf. Hornstein v. Barry,* 560 A.2d

530, 536 n. 15 (D.C.1989) (en banc) (emphasizing desirability of "harmony between court systems and uniformity of result in the same geographic area").[5]

In *Nat'l Sav. Bank,* the court concisely addressed the precise issue presented here:

> The [c]ourt notes that Rule 6(e)'s 3-day extension is *not* subject to Rule 6(a)'s exclusion of intermediate weekends and holidays. Rule 6(a) speaks in terms of *computing* times allowed or prescribed by rules, while Rule 6(e) speaks of *adding* to prescribed periods. It is fairly obvious that one cannot add to a period not yet defined or prescribed. Hence, it would be unreasonable to conclude that a party may exclude intermediate weekends and holidays when computing the separate 3-day mailing period. *Allen v. Colgate–Palmolive Co.,* 1987 WL 7365, 1987 U.S. Dist. LEXIS 1158 (S.D.N.Y. February 20, 1987).

127 F.R.D. at 222 n. 7 (emphasis in original).

The majority has not cited any authority, and I have found none, in which the three-day mailing period of Rule 6(e)—either the federal rule or the local rule—has been held to refer to business days. The majority relies primarily on *Wallace v. Warehouse Employees Union No. 730,* 482 A.2d 801, 802 (D.C.1984), in which the court stated that "each period of time ... is to be considered separately." In my colleagues' view, the three-day mailing extension is therefore a "period of time"

---

4. *See also Vaquillas Ranch,* 844 F.Supp. at 1159:

This [c]ourt adopts the combined approach of *Nalty* and *National Savings* and will not exclude weekends and holidays from the computation of the three day mailing extension of Rule 6(e), but will extend the period to the next official business day if the last day of the three days falls on a weekend or holiday.

5. To be sure, in *Hornstein,* this court and the United States Court of Appeals were construing *the same* constitutional provision, not identically worded but different rules of civil procedure. In my view, however, the interest in harmony in the present case is nevertheless almost as great as in *Hornstein.*

from which Saturdays and Sundays are to be excluded pursuant to Rule 6(a). In my view, however, the court reads *Wallace* as standing for a proposition which the court had no occasion to, and did not, address. In *Wallace,* as the court noted, the court was presented with "basically two methods of computing time." *Id.* at 808. Under one method, the ten-day prescribed period and three-day extensions were combined to form a single thirteen-day period (thus including weekends and holidays). *Id.* at 808–10. Under the other method, which the court adopted, the ten-day "prescribed period" was calculated first (excluding weekends and holidays), and the three-day mailing extension was then added. *Id.* The court's instruction to consider each period "separately" was, therefore, an instruction not to combine the periods into a single period of thirteen days, as was urged by the appellant in that case, but instead to calculate the prescribed period of ten days first, followed by "three additional days to *the period already provided.*" *Id.* Indeed, the plaintiff asserts, and Dr. Fischer does not deny, that all of the mailing days before the court in *Wallace* were weekdays, so that the issue whether the three-day mailing extension excludes Saturdays and Sundays, as Dr. Fischer insists, simply was not presented or addressed. Indeed, my colleagues acknowledge, maj. op. at 137, that in *Wallace,* "nothing turned on the distinction" between business days and calendar days, whereas that distinction is dispositive of the present appeal.

The majority also cites *Singer v. Singer,* 583 A.2d 689 (D.C.1990) (per curiam). The court held in *Singer,* citing *Wallace,* that the additional five-day period then provid-

ed by former D.C.App. R. 4(a)(3) [6] for filing a notice of appeal from an order entered outside the presence of the court should be considered separately from the thirty-day period for filing a notice of appeal, and that Saturdays, Sundays, and holidays should be excluded from the five-day period. The court held, in other words, that the five-day period should be construed as meaning five business days. But the five-day period at issue in *Singer* differs from the three-day extension in the case before us in that it comes into operation before the thirty-day period begins to run; it therefore cannot be characterized as an "extension" of that period. *Cf. Conselho Nacional,* 311 U.S.App.D.C. at 87, 50 F.3d at 58. Moreover, in a footnote at the conclusion of the opinion, the court effectively differentiated the situation in *Singer* from the case before us:

> The plain language of Rule 4(a)(3) also supports treating the five-day period as a separate period. The rule does not provide that a party has thirty-five days to file a notice of appeal *or that five additional days are added to the thirty days.* Instead, Rule 4(a)(3) states that this court does not begin counting the thirty-day period for filing a notice of appeal until five days after the trial court enters the judgment on its docket.

*Singer,* 583 A.2d at 691 n. 1 (emphasis added). The italicized language in the footnote fairly characterizes the scenario before us: under Rule 6(a) and (e), three additional days *are* added to the ten days provided by Rule 59. By its own terms, therefore, *Singer* cannot control the present case.

---

**6.** Rule 4(a)(3) provided that

[w]hen a judgment or final order is entered or decided out of the presence of the parties and counsel, such judgment or order shall not be considered as having been entered,

for the purpose of calculating the time for filing a notice of appeal ... until the fifth day after the Clerk of the Superior Court has made an entry on the docket ... reflecting the mailing of notice by that clerk.

Nor is Dr. Fischer's position materially aided by our statements in *Wallace* that Rule 6(e) should be construed "liberally" to avoid inequity, 482 A.2d at 809, and "to further the cause of justice." *Id.* at n. 23. Although I agree that the rule should be equitably construed, I do not consider that principle to be helpful to Dr. Fischer here. Whether, in a situation such as the one here presented, the period within which Dr. Fischer had to file his motion should exclude weekends and holidays (as Dr. Fischer urges) or include them (as Ms. Faggins contends) does not implicate equitable principles or "the cause of justice," for there is nothing unfair or inequitable either in giving Dr. Fischer, on facts such as these, a total of twenty days to file his motion or in allowing only eighteen days. Rather, what is required is fair notice to litigants regarding the date by which they must file. In light of the analogous decision in *Conselho Nacional* by the United States Court of Appeals for this Circuit, Dr. Fischer's counsel was on notice that filing the motion on the last day under his own theory of computation—a theory lacking any analogous support at all in the case law—was, at the very best, an unduly risky venture, and a decision to follow the federal precedents cannot reasonably be viewed as unfair to Dr. Fischer. Indeed, I believe that a decision construing our rule consistently with the federal rule, in this Circuit and elsewhere, would be just and equitable in that it would enhance predictability and thus diminish the likelihood of miscalculation.

## II.

For the foregoing reasons, I would hold that Dr. Fischer's Rule 59(e) motion was untimely. Accordingly, and although I would agree with my colleagues (if I were to reach that issue) that a new trial was warranted and that the result of the second trial must therefore stand, I must respectfully dissent.